IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MERCK & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 05-658 (GMS) |
| v. | ) | |
| | ) | |
| WATSON LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**WATSON'S ANSWERING BRIEF IN OPPOSITION TO MERCK'S MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Adam Balick (ID No. 2718)
Joanne Ceballos (ID No. 2854)
BIFFERRATO GENTILOTTI BIDEN &
BALICK
711 King Street
Wilmington, DE 19801
(302) 658-4265

Robert F. Green
Steven H. Sklar
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601-6780
Voice: (312) 616-5600
Facsimile: (312) 616-5700

Attorneys for Defendant
**WATSON LABORATORIES, INC.**

Dated: March 8, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………..…..ii

NATURE AND STAGE OF THE PROCEEDINGS……………………………....1

SUMMARY OF ARGUMENT  ………………………………………………2

STATEMENT OF FACTS  ……………………………………………………...2

ARGUMENT

I. This Court has Subject Matter Jurisdiction over Watson's  Declaratory
   Judgment Counterclaims………..……………………………………………5

      A.     Merck's Covenant Not to Sue is Legally Void………………………..5
      B.     The Parties' Dispute Over Entry of a Consent Judgment is Sufficient
            to Support The Court's Continued Jurisdiction Over Watson's Declaratory
            Judgment Counterclaims…………………………………………………..6
      C.     Merck's Covenant Not To Sue Does Not Eliminate Watson's Apprehension
            Of Facing a Future Infringement Action……………………………..…9
      D.     The Court Retains Jurisdiction Over Watson's Request
            for Attorney's Fees……………………………………………………….10

II. Merck Should Not Be Permitted To Voluntarily Dismiss its Complaint…………………11

      A.     Dismissal of the Complaint Would Potentially Permit Merck to Avoid An
            Adverse Determination of Non-Infringement and Invalidity………………..12
      B.     If the Court is Inclined to Dismiss the Action, Then the Proposed Form
            of Order Submitted by Watson Should be Entered…………………………15
      C.     Summary Judgment of Non-Infringement and Invalidity Should
            be Considered…………………………………………………………….17

CONCLUSION…………………………………………………………..18

EXHIBIT A………………………………………………………………Attached

EXHIBIT B………………………………………………………….....Attached

EXHIBIT C…………………………………………………………....Attached

EXHIBIT D………………………………………………………...…Attached

EXHIBIT E………………………………………………….…...Attached

EXHIBIT F………………………………………………….…...Attached

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Andrx Pharmaceuticals, Inc. v. Biovail Corp.*, 276 F.3d 1368 (Fed. Cir. 2002)................12

*City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000)..................................................8

*DuToit v. Strategic Minerals Corp.,* 136 F.R.D. 82 (D.Del. 1991).............................12

*Ferguson v. Eakle,* 492 F.2d 26 (3d Cir. 1974) ...................................................12

*Glaxo Group Ltd. v. Apotex, Inc.,* 376 F.3d 1339 (Fed. Cir. 2004) ...........................9

*Glaxo, Inc. v. Novopharm Ltd.,* 110 F.3d 1562 (Fed. Cir. 1997) ...............................9

*Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.,*
    395 F.3d 1364 (Fed. Cir. 2005) ....................................................... 4, 14, 16

*Minnesota Mining & Mfg. Co. v. Barr Laboratories, Inc.,*
    139 F.Supp.2d 1109 (D. Minn. 2001),
    *aff'd,* 289 F.3d 775 (Fed. Cir. 2002)..................................................7,8,15,17

*Mobil Oil Corp. v. Advanced Envtl. Techs., Inc.,* 203 F.R.D. 159 (D. Del. 2001)..............12

*Mylan Pharmaceuticals, Inc. v. Thompson,* 268 F.3d 1323 (Fed. Cir. 2001)....................12

*Samsung Electronics Co. v. Rambus, Inc.,* 398 F.Supp.2d 470 (E.D.Va. 2005)................10

*SmithKline Beecham Corp. v. Geneva Pharmaceuticals, Inc.,*
    210 F.R.D. 547 (E.D. Pa. 2002) ............................................................8

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995).............9

*Teva Pharmaceuticals, USA, Inc. v. Pfizer, Inc.,* 395 F.3d 1324 (Fed. Cir. 2005)............ 12

*Teva Pharmaceuticals, USA, Inc. v. U.S. Food and Drug Admin.,*
    182 F.3d 1003 (D.C. Cir. 1999) ....................................................8, 13

<u>RULES AND STATUTES</u>

Federal Rule of Civil Procedure 12(b)(1) ...................................................... 5

Federal Rule of Civil Procedure 41 (a) ............................................5, 11, 12, 15

21 U.S.C. § 355.................................................................... 2, 12

35 U.S.C. § 271(e)(2)…………………………………………………………………1,9,11

35 U.S.C. § 271(e)(4)……………………………………………...………………..9

35 U.S.C. § 285……………………………………………………………...10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MERCK & CO., INC.,                          )
                                            )
            Plaintiff,                      )
                                            )       C.A. No. 05-658 (GMS)
      v.                                    )
                                            )
WATSON LABORATORIES, INC.,                  )
                                            )
            Defendant.                      )
_____)

## WATSON'S ANSWERING BRIEF IN OPPOSITION TO MERCK'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant Watson Laboratories, Inc. ("Watson") submits this brief in opposition to

Plaintiff Merck & Co., Inc.'s ("Merck") motion to dismiss for lack of subject matter jurisdiction.

## NATURE AND STAGE OF PROCEEDINGS

Merck initiated this dispute by suing Watson for patent infringement.  In its September 7,

2005 Complaint, Merck alleged that Watson infringed on nine patents pursuant to 35 U.S.C. §

271(e)(2)(A) based upon Watson's filing of ANDA No. 76-768.  On October 19, 2005, Watson

filed its Answer denying patent infringement and asserting counterclaims seeking a declaration

of invalidity and non-infringement of the nine patents.  Merck filed its Answer to the

counterclaims on January 6, 2006.

On February 16, 2005, Merck filed a Motion to Dismiss for Lack of Subject Matter

Jurisdiction.  This is Watson's Opposition to the Motion to Dismiss.

## SUMMARY OF ARGUMENT

I.      Merck's unilateral offer of a covenant not to sue does not eliminate subject matter jurisdiction of counterclaims brought by Watson in this case.  In the first instance, the purported covenant not to sue is an unenforceable promise that has no legal significance.  On that basis, Watson cannot be compelled to forego the claims that it filed against Merck.  Even if the covenant not to sue were enforceable, it would not eliminate all of the disputes that exist as a result of Watson's counterclaims (and Merck's affirmative claims) filed in this case.  Meaningful issues remain unresolved. As a result, this Court continues to have subject matter jurisdiction over this action.

II      Merck's attempt to have its own affirmative claims of infringement dismissed as a result of its promise not to sue Watson is a self-serving attempt to avoid the adverse consequences that it will suffer by allowing the case to be adjudicated on the merits.  Merck's proposed form of order of dismissal is crafted in a way that would potentially permit Merck to avoid an adverse determination of infringement and thereby prejudice Watson.  Rather than grant Merck's request, the Court should execute the form of order proposed by Watson, which will, among other things, permit this court to retain jurisdiction and enforce the covenant not to sue.

## STATEMENT OF FACTS

The parties' current dispute first began to take shape with Watson's filing of an ANDA for alendronate sodium tablets.  This ANDA included a certification pursuant to 21 U.S.C. §

2

355(j)(2)(A)(vii)(IV), commonly known as a "Paragraph IV certification," that nine Merck

patents were invalid, unenforceable and/or not infringed.[1]

As required by statute, Watson sent notice of its Paragraph IV certification to Merck on

July 27, 2005. (Exhibit A).[2]  This notice included a detailed statement of the reasons why, in

Watson's opinion, these nine patents are invalid, unenforceable and/or not infringed by Watson's

alendronate product.  Specifically, Watson indicated that several patents directed to alendronate

formulations[3] are not infringed by Watson's proposed formulations or the form of the

alendronate active ingredient used by Watson.  (Exhibit A, at 2-14).  For the patents directed to

once-weekly dosing regimens,[4] Watson stated that the claims are either invalid as obvious or not

infringed by Watson's alendronate sodium tablets.  (Exhibit A, at 14-22).

Following receipt of Watson's notice letter, Merck requested detailed information about

Watson's ANDA, including the formulation for the alendronate sodium tablets and the

accompanying prescribing information.  Merck and Watson entered into a Confidentiality

Agreement in early August, 2005 whereby information was provided solely "for the purpose of

evaluating whether Merck should institute patent infringement litigation against Watson."

---

[1] These nine patents are listed for Merck's Fosamax® alendronate tablets in the "Orange Book" published by the Food and Drug Administration ("FDA").

[2] Citations to "Exhibit ___ " refer to exhibits that accompany this opposition brief.  In contrast, citations to "D.I. 17, Exhibit ___ " refer to exhibits to Merck's motion to dismiss.

[3] The patents directed to alendronate formulations and the alendronate active ingredient are the subject of Counts I-VI of the Complaint and include the following:  U.S. Patents 5,358,941 (Count I), 5,681,590 (Count II), 5,894,726 (Count III), 6,008,207 (Count IV), 6,090,410 (Count V) and 6,194,004 (Count VI).  These same six patents are the subject of Counts I-XII of Watson's Counterclaims.

[4] The patents relating to once-weekly dosing regimens of alendronate are the subject of Counts VII-IX of the Complaint and include the following:  U.S. Patents 5,994,329 (Count VII), 6,015,801 (Count VIII), and 6,225,294 (Count IX).  The same three patents are the subject of Counts XII-XVIII of Watson's Counterclaims.

(Exhibit B, at 1).   The confidential information about Watson's ANDA was sent to Merck on August 10, 2005.  (Exhibit C).  No further information was sought by Merck.

By this time, certain claims of the '329 patent directed toward once-weekly dosing of alendronate had been held invalid by the U.S. Court of Appeals for the Federal Circuit in *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005).  Merck's '329 patent had been held invalid by the Federal Circuit (on January 28, 2005) over six months prior to receipt of information about Watson's alendronate sodium tablets.  Moreover, Merck's petition for rehearing was denied by the Federal Circuit (on April 21, 2005) over three months before Watson provided the requested information.

Nevertheless, with full knowledge of both Watson's alendronate tablet formulations and the Federal Circuit's conclusive invalidity finding, Merck instituted this infringement action against Watson on September 7, 2005.

Merck continued to actively pursue its claims against Watson even after the U.S. Supreme Court denied Merck's petition for a writ of certiorari on October 17, 2005. Specifically, Merck replied to Watson's Counterclaims (D.I. 11), conferred with Watson on the submission of the parties' Rule 16 Scheduling Order (D.I. 13) and served its Rule 26(a)(1) Initial Disclosure Statement (D.I. 15).  During this entire five-month period – from September, 2005 to February, 2006 – Merck never once indicated to the Court of its intention to grant Watson a covenant not to sue.

On February 3, 2006, Watson alerted Merck of its intention to file a summary judgment motion on the three once-weekly dosing regimen patents-in-suit – patents that were previously held invalid by the Federal Circuit or are invalid for the same reasons as relied on by the Federal

4

Circuit. (Exhibit D). Only then did Merck offer and forward an executed covenant to Watson. (Exhibit E).

## ARGUMENT

**I.    This Court has Subject Matter Jurisdiction over Watson's Declaratory Judgment Counterclaims**

Merck's motion to dismiss fails to distinguish claims of infringement in its own Complaint from the declaratory judgment claims of non-infringement and invalidity in Watson's counterclaims. The two distinct parts of this action – the Complaint and Counterclaims – are treated separately under the Federal Rules of Civil Procedure. The dismissal of Merck's complaint is governed by FED. R. CIV. P. 41(a) while the dismissal of Watson's counterclaims for lack of subject matter jurisdiction is properly considered under FED. R. CIV. P. 12(b)(1). The proposed dismissal of Watson's Counterclaims is addressed first in this section with the dismissal of Merck's Complaint discussed below in Section II.

### A.    Merck's Covenant Not to Sue is Legally Void

The covenant not to sue unilaterally granted by Merck cannot serve as the basis for eliminating subject matter jurisdiction over Watson's counterclaims. Merck's suit against Watson remains pending and has not been dismissed. By maintaining its claims of patent infringement against Watson, the covenant was void upon execution. That is, Merck's agreement to "not sue Watson for infringement of, or otherwise assert, enforce, or hold Watson liable for infringement" of the patents-in-suit has not been met. Watson continues to be a defendant in this action.

Moreover, the pledge not to sue given by Merck in connection with this dispute is of limited value. It is not a contract that can be enforced. There was no consideration. Nowhere in

5

the covenant does Merck provide for dismissal of the Complaint. Merck makes no promises in this regard. In the six weeks since the covenant not to sue was executed and forwarded to Watson, Merck has not taken any action to dismiss the complaint. If this case is dismissed in response to Merck's motion, there is no way to enforce the promise. The Court does not retain jurisdiction to enforce the covenant. The pending motion to dismiss is insufficient as the alleged lack of jurisdiction has no impact on Merck's Complaint.

As demonstrated by the proposed dismissal order (D.I. 17, Exhibit A), Merck seeks to condition the dismissal of its Complaint on the dismissal of Watson's Counterclaims, something that Watson is unwilling to agree to under these circumstances. Merck cannot wait to dismiss its Complaint until Watson's Counterclaims are dismissed while continuing to assert that Watson is in "a secure position" free of any fear of infringement. (D.I. 17, at 3). As long as Watson continues to be subject to an allegation of infringement of the nine patents-in-suit, then this Court has subject matter jurisdiction over the counterclaims.

### B.     The Parties' Dispute Over Entry of a Consent Judgment is Sufficient to Support the Court's Continued Jurisdiction Over Watson's Declaratory Judgment Counterclaims

Even if the covenant not to sue is determined to be proper despite the continued assertion of infringement against Watson, Merck's motion demonstrates that there is an ongoing disagreement over the form of dismissal that is appropriate to resolve the dispute. Merck believes that the dismissal albeit, with prejudice, should have "no bearing" on the infringement, validity or enforceability of the patents-in-suit. The existence of this dispute has been evident to Merck since Watson's initial refusal to sign the Joint Stipulation and Agreed Order of Dismissal that Merck first provided in November, 2005. (D.I. 17, Exhibit C).

Contrary to the position advanced by Merck, the execution of a covenant not to sue by Merck has not eliminated the continued existence of a controversy that originated when Merck

6

filed suit against Watson and has continued through the pre-trial phase of this action. These disputes are more fully set forth below.

In *Minnesota Mining & Mfg. Co. v. Barr Laboratories, Inc.*, 289 F.3d 775 (Fed. Cir. 2002), the Federal Circuit was faced with a nearly identical argument regarding the existence of a case or controversy to support jurisdiction in an ANDA infringement action. Following the patentee's ("3M") representation that the generic ("Barr") no longer infringement the patent-in-suit, 3M sought dismissal of the action without prejudice. *Minnesota Mining*, 289 F.3d at 780. 3M had determined it was no longer in its best interest to pursue an infringement action that could ultimately lead to triggering of the 180-day exclusivity period and, thus, abandoned its assertion of infringement. *Id.* at 779. Barr countered by insisting that a dismissal with prejudice was appropriate. The district court declined to dismiss 3M's action without prejudice, but instead dismissed the action with prejudice. *Id.*

The Federal Circuit concluded that the district court did indeed have subject matter jurisdiction to resolve the parties' dispute over the form of the dismissal even after 3M agreed there was no infringement by Barr. *Id.* at 780. In determining that the parties' disagreement over dismissal was a sufficient case or controversy to support jurisdiction, the Court stated:

> [I]f this case did not involve the Hatch-Waxman Amendments, appellants might well be correct that a case or controversy ceased to exist in the course of the litigation when 3M represented that it no longer claimed infringement by Barr. But the case does involve the Hatch-Waxman Amendments, and the parties strenuously disagree about whether the action should be dismissed with or without prejudice. 3M urges that the form of dismissal could have significant consequences in the FDA proceedings. Whether or not 3M is correct that the form of dismissal will have consequences in the FDA proceedings, these differences are more than sufficient to create subject matter jurisdiction as the Supreme Court has made clear in *ASARCO, Inc. v. Kadish*. There the Court found that the original controversy between the parties in a state court action did not satisfy the requirements for federal jurisdiction (because the plaintiffs' interest did not confer standing), but the ensuing controversy over the propriety of the relief awarded was sufficient for federal subject matter jurisdiction. So here, the

> underlying patent controversy under *Fina* may not have been sufficient for continuing federal jurisdiction, but the controversy over the form of dismissal was itself sufficient under *ASARCO*.

*Id.* (citations omitted); *see also City of Erie v. Pap's A.M.,* 529 U.S. 277, 288 (2000) (noting that a court's interest in preventing litigants from attempting to manipulate the court's jurisdiction to achieve a favorable decision counsels against a finding of mootness).

The Federal Circuit's finding that subject matter jurisdiction existed in *Minnesota Mining* supports a finding that this Court continues to have subject matter jurisdiction over the present dispute between Merck and Watson. Clearly, there is a disagreement over the form of dismissal that is appropriate. This is not a trivial distinction as Watson wants to ensure that the 180-day exclusivity period is triggered.[5] Merck's contention that the dismissal should have "no bearing" on infringement, validity or enforceability of the patents-in-suit (D.I. 17, Exhibit A) is directly at odds with Watson's proposed Form of Order (discussed below in Section II.B.) that its alendronate product "does not infringe any valid claim" of these same patents. (Exhibit F).

This dispute over the manner of dismissal is sufficient to create subject matter jurisdiction. The granting of a covenant not to sue does not eliminate the ongoing case or controversy. An ANDA-filer, such as Watson, "has no obligation to avoid triggering litigation that will benefit it by starting a competitor's exclusivity period." *SmithKline Beecham Corp. v. Geneva Pharmaceuticals, Inc.,* 210 F.R.D. 547, 554 (E.D. Pa. 2002) (*citing Minnesota Mining*, 289 F.3d at 781).

In sum, the continuing controversy between Merck and Watson over the form of dismissal is a sufficient dispute to support the continuation of subject matter jurisdiction in this

---

[5] Watson does not waive in any way its ability to argue in the future that the grant of Merck's motion to dismiss is sufficient to trigger exclusivity in view of *Teva Pharmaceuticals, USA, Inc. v. U.S. Food and Drug Admin.,* 182 F.3d 1003 (D.C. Cir. 1999) and other decisions.

Hatch-Waxman infringement action even after the covenant not to sue. The decision in *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995), relied on by Merck does not compel dismissal under the particular circumstances of this case.

### C.   Merck's Covenant Not To Sue Does Not Eliminate Watson's Apprehension of Facing a Future Infringement Action

In addition with the issues raised above with respect to the enforceability of the covenant, Merck's covenant has failed to foreclose an action by Merck for infringement over Watson's alendronate ANDA in the future. Specifically, the covenant only focuses on infringement based on the "importation, manufacture, use, sale or offer for sale of the alendronate sodium tablets that are the subject of and described in Watson's ANDA." (Exhibit E). The covenant does not exclude the possibility that Merck could sue Watson for infringement at a later date based on the filing of the ANDA itself. While the covenant is concerned with the actual product that Watson will manufacture and sell, it ignores the filing of the ANDA.

The filing of the ANDA itself is an act of infringement under 35 U.S.C. § 271(e)(2)(A). See *Glaxo Group Limited v. Apotex*, Inc., 376 F.3d 1339, 1344 (Fed. Cir. 2004); *Glaxo, Inc. v. Novopharm Ltd.*, 110 F.3d 1562, 1569 (Fed. Cir. 1997). Injunctive relief is available as a remedy in an action for infringement based on the filing of an ANDA. See 35 U.S.C. § 271(e)(4). An injunction can prevent the ANDA-filer from receiving final FDA approval until the expiration of the infringed patent. *Id.* Moreover, the commercial manufacture, use, offer for sale or sale may be enjoined as a result of infringement due to the filing of an ANDA. *Id.*

The covenant granted to Watson does not prevent Merck from suing Watson for infringement as a result of the filing of the ANDA at some point in the future (presumably prior to the launch of Watson's alendronate sodium tablets). In such an action, Merck would be able to obtain the same injunctive remedies that it is purportedly foregoing in the covenant not to sue.

This critical omission from the covenant (whether deliberate or not) is highlighted in Merck's proposed Order of Dismissal. In paragraph 3 of the proposed order (D.I. 17, at 2), Merck contends that it has covenanted not to sue based on (1) the filing of Watson's ANDA and (2) Watson's manufacture, use, distribution, sale, offer for sale and importation of alendronate products that are the subject of the ANDA. This first-prong is absent from the covenant not to sue. (Exhibit E).

Even after granting the covenant, Merck remains free to file an infringement action down the road in an effort to block Watson from manufacturing and selling its generic alendronate products. In such an action, Merck will have the full range of injunctive remedies at its disposal (assuming, of course, that the patents are determined to be valid and infringed). Merck has not adequately insulated Watson from future causes of action by offering the covenant.

Watson remains concerned that Merck will again bring suit for infringement seeking to block approval of the exact same alendronate sodium tablets at issue in this action. The covenant not to sue granted by Merck is insufficient to eliminate future controversies.

**D.     The Court Retains Jurisdiction Over Watson's Request for Attorneys Fees**

Even if the Court determines that subject matter jurisdiction over Watson's declaratory judgment counterclaims no longer exists, the Court nonetheless retains jurisdiction to decide Watson's claim for attorney's fees. *See Samsung Electronics Co. v. Rambus, Inc.*, 398 F.Supp.2d 470 (E.D. Va. 2005). In the Prayer for Relief in the Answer, Affirmative Defense, and Counterclaims, Watson seeks a declaration that this case is exceptional under 35 U.S.C. § 285 which includes the award of attorneys' fees. (D.I. 5, at 25).

The award of attorneys' fees is particularly appropriate in this case (assuming that Watson's counterclaims are dismissed). Merck brought suit, in part, on patent claims that were

judicially determined to be invalid. Furthermore, Merck completely reversed course on the alleged infringement of its patents directed to alendronate formulations (Counts I-VI of the Complaint). After Watson provided confidential information about its alendronate sodium tablets, Merck proceeded to file suit and continue to litigate for several months during the initial pre-trial phase of this action. Now Merck has abruptly granted a covenant not to sue in an effort to walk away from a potentially adverse outcome (as discussed further below in Section II). This Court retains jurisdiction (even if Merck's motion to dismiss is granted) to permit Watson to pursue its prayer for attorneys' fees in having to defend against this frivolous lawsuit.

## II.     Merck Should Not Be Permitted To Voluntarily Dismiss its Complaint

Unlike the counterclaims, the proposed dismissal of Merck's Complaint is governed by FED. R. CIV. P. 41(a)(2).[6] The issue of subject matter jurisdiction has no application to the dismissal of Merck's own Complaint. While Merck makes no effort to distinguish between these two aspects of the case, Merck is clearly seeking a dismissal of its own complaint.

Due to the particular circumstances of this Hatch-Waxman infringement action against an ANDA-filer under 35 U.S.C. § 271(e)(2), Merck should not be permitted to voluntarily dismiss its Complaint. Instead, the entry of a Consent Judgment as Watson previously proposed to Merck (Exhibit F) is the appropriate way to resolve this matter. Alternatively, Watson seeks leave to file a summary judgment motion as no genuine issues of material fact concerning either non-infringement or invalidity of the patents-in-suit.

---

[6] Merck cannot seek dismissal of its Complaint without court order pursuant to FED. R. CIV. P. 41(a)(1) because Watson has already answered the complaint and will not stipulate to dismissal.

### A. Dismissal of the Complaint Would Potentially Permit Merck to Avoid An Adverse Determination of Non-infringement and Invalidity

Under FED. R. CIV. P. 41(a)(2), voluntary dismissal is not permitted where the defendant will suffer "plain legal prejudice." *Mobil Oil Corp. v. Advanced Envtl. Techs., Inc.*, 203 F.R.D. 159, 158 (D. Del. 2001); *see Ferguson v. Eakle*, 492 F.2d 26, 29 (3rd Cir. 1974) (commenting in determining the propriety of a voluntary dismissal that "it becomes necessary to decide the presence or extent of any prejudice to the defendant by the draconian measure of dismissing plaintiff's suit.") A motion for dismissal may be denied when the purpose is to avoid an adverse determination on the merits. *See, e.g., DuToit v. Strategic Minerals Corp.*, 136 F.R.D. 82, 85–86 (D. Del. 1991). By unilaterally issuing a covenant not to sue, Merck has attempted to avoid the consequences of its decision to sue Watson. Merck specifically seeks to avoid the so-called "triggering" of the 180-day exclusivity period provided by 21 U.S.C. § 355(j)(5)(B)(iv).[7]

Watson's opposition to Merck's attempt dismiss the case is its concern that the dismissal of this action may be viewed as a "decision of a court" under 21 U.S.C. § 355(j)(5)(B)(iv)(II).[8] Such a court decision would trigger the 180-day exclusivity period enjoyed by the first ANDA-filer (an entity other than Watson) that previously submitted a Paragraph IV certification with

---

[7] A complete discussion of the nuances of the Hatch-Waxman Act is not necessary for purposes of Watson's opposition. For a more detailed analysis of the filing and approval of ANDAs by generic drug manufacturers, see *Mylan Pharmaceuticals, Inc. v. Thompson*, 268 F.3d 1323 (Fed. Cir. 2001) and *Andrx Pharmaceuticals, Inc. v. Biovail Corp.*, 276 F.3d 1368 (Fed. Cir. 2002). The 180-day generic exclusivity period is further discussed in *Teva Pharms. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324 (Fed. Cir. 2005). Notably, the "court decision" trigger continues to apply to ANDAs for alendronate sodium tablets (including Watson) even though the 180-day exclusivity provisions were revised as part of the Medicare Modernization Act of 2003. *Id.*

[8] Watson expressly reserves the right to assert at a future time (in either this court or elsewhere) that Merck's proposed Order of Dismissal (D.I. 17, Exhibit A) is a "decision of the court" under 21 U.S.C. § 355(j)(5)(B)(iv)(II). That is, Watson does not concede in any way that entry of the Order of Dismissal as proposed by Merck is insufficient to trigger the 180-day exclusivity period.

respect to the patents-in-suit listed in FDA's Orange Book. *See Teva Pharmaceuticals, USA,*

*Inc. v. U.S. Food and Drug Admin.*, 182 F.3d 1003, 1007-12 (D.C. Cir. 1999). The 180-day

exclusivity period (awarded to the first ANDA-filer) can properly be triggered by the termination

of an infringement action against a subsequent ANDA-filer that does not necessary involve the

first ANDA-filer. *Id.* at 1010.

Under the circumstances specific to alendronate sodium tablets, the triggering exclusivity

could mean that Watson and multiple other generic drug manufacturers (perhaps six or more)

will receive final FDA approval to market their products at the same time.[9] Merck would prefer

to compete with only a single generic drug company during the initial 180-day period to

maximize its profits before the market goes fully "generic."

Merck does not want to do anything that might lead to a court decision that is sufficient

to trigger the 180-day exclusivity period. Merck wants to keep Watson off the market with its

alendronate sodium tablets as long as possible. Merck has granted Watson a covenant with this

goal in mind. In paragraphs 2 and 3 of the Covenant Not To Sue (Exhibit E), Merck attempts to

avoid the appearance of a court decision of invalidity or non-infringement by expressly stating

that the covenant "has no bearing" on the issue of infringement of the patents-in-suit or the

validity or enforceability of the patents-in-suit. Merck's proposed dismissal order likewise

asserts that dismissal has "no bearing" on infringement, invalidity or enforceability. (D.I. 17,

Exhibit A).

Merck should not be permitted to avoid an adjudication on the merits by dismissing its

action. With a decision on the merits, Watson's generic alendronate product could be unfairly

---

[9] The critical date for approval of alendronate ANDAs is February 6, 2008 following the
expiration of U.S. Patent 4,621,077 (on August 6, 2007) plus the six-month pediatric exclusivity
period awarded to Merck.

kept off the market. Importantly, the patents-in-suit were known by Merck to be either plainly invalid or not infringed at the time suit was filed. The Federal Circuit in *Merck v. Teva* had already invalidated several claims directed to the once-weekly administration of alendronate. The broader claims of the once-weekly patents are invalid for the same reasons relied on by the Federal Circuit. Additionally, Merck was in possession of extensive information about Watson's alendronate formulations that was provided specifically for the purpose of Merck's evaluation of infringement. Despite being well-versed in Watson's invalidity and non-infringement position, Merck filed suit anyway.

Nothing has changed during the course of this action that merits voluntary dismissal. The Supreme Court's decision to deny Merck's petition for certiorari on the validity of the '329 patent only confirmed what Merck knew when it filed suit, namely that certain claims of the '329 patent were invalid as obvious. By granting Watson a covenant not to sue, Merck apparently concedes that it can no longer continue to pursue its allegations of infringement in good faith. At the same time, Merck recognizes that it must obtain the Court's dismissal of this action in a way that does not lead to undesired results with respect to generic exclusivity provided by the Hatch-Waxman Act. That is the only explanation for Merck's contention that the covenant not to sue has "no bearing" on the issues of infringement, invalidity and unenforceability.

It would be prejudicial to permit Merck to escape consequences of filing this action. Watson might be delayed from marketing its alendronate products by six months if it is forced to wait until the expiration of the first ANDA-filer's exclusivity. This is especially egregious given that, at the time of filing suit, Merck knew that the claims of its once-weekly dosing regimen patents were invalid and that Watson did not infringe the formulation patents. If Merck's legal

14

maneuvering is permitted, Watson may not be able to obtain a court decision necessary to expedite the approval of its ANDA.

In *Minnesota Mining*, the Federal Circuit affirmed the denial of a dismissal (without prejudice) in these precise circumstances. Specifically, the Federal Circuit held that the district court properly found that 3M was "seeking to avoid a judgment that would be adverse to their interest in delaying Barr's entrance in the market and that this was not a legitimate justification for their desire to dismiss without prejudice." *Minnesota Mining*, 289 F.3d at 783-84. Merck should not be able to game the Hatch-Waxman drug approval process just as the patentee in *Minnesota Mining* was prohibited from doing. Instead, Watson should be permitted to obtain a final decision on the merits of the infringement claims in Merck's Complaint.

**B.     If the Court is Inclined to Dismiss this Action, Then the Proposed Form of Order Submitted by Watson Should Be Entered**

This Court has the authority under FED. R. CIV. P. 41(a)(2) to dismiss an action "upon such terms and conditions as the court deems proper." If the Court is disposed to dismiss this action, Merck should not be able to avoid the consequences of an adverse judgment under the Hatch-Waxman Act, specifically the triggering of the 180-day exclusivity period. Under these circumstances, this Court can properly enter Watson's proposed Form of Order pursuant to the authority granted by FED. R. CIV. P. 41(a)(2).

The Form of Order proposed by Watson (Exhibit F) is an appropriate way to resolve the infringement allegations in Merck's Complaint as the patents were plainly invalid or not infringed at the time suit was filed. Merck was in possession of extensive information about Watson's alendronate formulations that was provided specifically for the purpose of Merck's evaluation of infringement. Additionally, the Federal Circuit had already invalidated several

claims directed to the once-weekly administration of alendronate. Despite being well-versed regarding Watson's invalidity and non-infringement contentions, Merck filed suit anyway.

Merck's Complaint was without merit for a host of reasons at the time was filed and continues to be. First, several claims of the '329 patent (Count VII) had been judicially determined to be invalid at time the Complaint was filed. Second, other claims of the '329 patent as well as the '801 and '294 patents (Counts VIII and IX, respectively) that cover the once-weekly dosing of alendronate are invalid for the same reasons relied on by the Federal Circuit in *Merck v. Teva*. Collateral estoppel prevents Merck from relitigating these claims that were originally at issue in *Merck v. Teva* and then dropped from the suit. Third, the remaining claims of these three patents directed to other active ingredients besides alendronate do not even cover Watson's alendronate sodium tablets. Fourth, the other patents-in-suit that are the subject of Counts I-VI of the Complaint are plainly not infringed by Watson's product for reasons that Merck had in its hands prior to filing suit. The '941, '590, '410 and '004 patents all require the presence of excipients that are not used in Watson's alendronate sodium tablets. Similarly, the '726 and '207 patents require the use of a particular form (anhydrous) of the alendronate active ingredient that is not used by Watson.

By granting Watson a covenant not to sue, Merck effectively conceded that it could no longer continue to pursue its allegations of infringement in good faith. At the same time, Merck recognized that it must obtain the Court's dismissal of this action in a way that would not lead to undesired results with respect to generic exclusivity provided by the Hatch-Waxman Act. That is the reason for Merck's contention that the covenant not to sue has "no bearing" on the issues of infringement, invalidity and unenforceability. It would be unfair to permit Merck to escape the consequences of filing this action.

In addition, the Form of Order proposed by Watson includes a provision that the Court will retain jurisdiction to enforce the terms of Merck's covenant not to sue. Without this provision, Merck's promise is not enforceable. Watson will be left without recourse for any breach of the covenant by Merck unless the Court retains enforcement jurisdiction.

In sum, if the Court believes that dismissal of this action is appropriate in light of Merck's covenant not to sue, then the Form of Order proposed by Watson (Exhibit F) should be entered.

### C.    Summary Judgment of Non-infringement and Invalidity Should Be Considered

If the proposed Form of Order is not entered, this Court should promptly consider granting summary judgment of non-infringement and invalidity. Merck no longer disputes the non-infringement and invalidity of the nine patents-in-suit as the result of the grant of a covenant not to sue. Watson seeks to resolve the parties' dispute as quickly and efficiently as possible. No discovery whatsoever is needed for this Court to be in a position to grant summary judgment. There are no genuine issues of material fact as noted in Section II.B.

Accordingly, concurrently with this opposition, Watson has filed a motion for leave to file a motion for summary judgment on all counts of both the Complaint and Counterclaims.[10] Because Merck will apparently not contest the merits of Watson's declaratory judgment counterclaims of non-infringement and invalidity, summary judgment is proper. *See Minnesota Mining & Mfg. Co. v. Barr Laboratories, Inc.*, 139 F.Supp.2d 1109, 1116 (D. Minn. 2001), *aff'd*, 289 F.3d 775, 784 (Fed. Cir. 2002).

---

[10] Watson believes that leave of court is required to file its proposed summary judgment earlier than the time frame set forth in Paragraph 6 of the Rule 16 Scheduling Order. (D.I. 13 at 3).

## CONCLUSION

For the reasons discussed above, Watson requests that this Court deny Merck's Motion to Dismiss for Lack of Subject Matter Jurisdiction. Merck's proposed Order of Dismissal should not be entered, but instead Watson's proposed Form of Order is appropriate. Merck's grant of a covenant not to sue to Watson does not eliminate the case or controversy between the parties and, therefore, this Court continues to have subject matter jurisdiction over the dispute.

Dated: March 8, 2006                    By: _____

                                                Adam Balick (ID No. 2718)
                                                Joanne Ceballos (ID No. 2854)
                                                BIFFERRATO GENTILOTTI BIDEN & BALICK
    711 King Street
    Wilmington, DE 19801
    (302) 658-4265

    Robert F. Green
    Steven H. Sklar
    LEYDIG, VOIT & MAYER, LTD.
    Two Prudential Plaza, Suite 4900
    Chicago, Illinois 60601-6780
    Voice: (312) 616-5600
    Facsimile: (312) 616-5700

    Attorneys for Defendant
    **WATSON LABORATORIES, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of March, 2006, a copy of the

foregoing **WATSON'S ANSWERING BRIEF IN OPPOSITION TO MERCK'S MOTION**

**TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** was served on

counsel for Plaintiff as follows:

### VIA ELECTRONIC MAIL

Mary B. Graham
Morris Nichols Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19801
mgraham@mnat.com

John F. Lynch
Howrey Simon Arnold & White, LLP
750 Bering Drive
Houston, TX  77057
lynchj@howrey.com

### VIA U.S. MAIL

Paul D. Matukaitis
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NY  08889-0100

Edward W. Murray
Merck & Co., Inc.
126 E. Lincoln Avenue RY28-320
Rahway, NJ  07065-0907