IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MERCK & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-658 (GMS) |
| | ) | |
| WATSON LABORATORIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF MERCK & CO., INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION IN LIGHT OF MERCK'S COVENANT NOT TO SUE

OF COUNSEL:

John F. Lynch
HOWREY, LLP
750 Bering Drive
Houston, TX  77057-2198
713.787.1400

Nicolas G. Barzoukas
Suzy S. Harbison
Jason C. Abair
WEIL, GOTSHAL & MANGES
700 Louisiana, Suite 1600
Houston, TX   77002
713.546.5000

Paul D. Matukaitis
MERCK & CO., INC.
One Merck Drive
Whitehouse Station, NJ  08889-0100
908.423.1000

Edward W. Murray
Gerard M. Devlin
MERCK & CO., INC.
126 E. Lincoln Avenue RY28-320
Rahway, NJ  07065-0907
732.594.4000

Dated:  March 20, 2006

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (# 2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Plaintiff*
*Merck & Co., Inc.*

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS .......................................................................... ii

INTRODUCTION .................................................................................... 1

ARGUMENT ........................................................................................... 4

    I.    MERCK'S COVENANT NOT TO SUE WATSON
    ELIMINATES SUBJECT MATTER JURISDICTION. ................ 4

        A.    Watson Cannot Meet Its Burden Of Establishing
        That Jurisdiction Still Exists Over Its Declaratory
        Judgment Action. .................................................................. 4

        B.    Merck's Covenant Not To Sue Is Fully Consistent
        With The Federal Circuit's Requirements As Set
        Forth In *Super Sack* And *Amana*. ...................................... 5

        C.    Dispute Over Entry of A Consent Order Is Not
        Sufficient To Support The Court's Continued
        Jurisdiction Over Watson's Declaratory Judgment
        Counterclaims. ....................................................................... 6

    II.    WATSON WILL NOT BE HARMED BY THE
    DISMISSAL WITH PREJUDICE ............................................... 8

<u>TABLE OF CITATIONS</u>

Page(s)

<u>Cases</u>

*Amana Refrigeration, Inc. v. Quadlux, Inc.*
        172 F.3d 852 (Fed.Cir. 1999)                                      5, 6, 7

*ASARCO, Inc. v. Kadish*
        490 U.S. 605 (1989)                                              8

*BP Chems. Ltd. v. Union Carbide Corp.*
        4 F.3d 975 (Fed.Cir. 1993)                                       4, 5

*Md. Cas. Co. v. Pac. Coal & Oil Co.*
        312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941)                  4

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*
        395 F.3d 1364 (Fed. Cir. 2005)                                   9

*Minnesota Mining and Mfg. Co., et al. v. Barr Labs., Inc.*
        289 F.3d 775 (Fed.Cir. 2002)                                     6, 7, 8, 10

*Preiser v. Newkirk*
        422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed. 2d 272 (1975)              5

*Sierra Applied Scis. v. Advanced Energy Indus., Inc.*
        363 F.3d 1361 (Fed.Cir. 2004)                                    5

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*
        57 F. 3d 1054 (Fed. Cir. 1995)                                   passim

*Teva Pharmaceuticals USA, Inc. v. United States Food & Drug*
        *Admin.*
        182 F.3d 1003 (D.C. Cir. 1999)                                   10

*Teva Pharms. USA, Inc. v. Pfizer, Inc.*
        395 F.3d 1324 (Fed.Cir. 2005)                                    4

<u>Statutes</u>

21 U.S.C. § 355(b)(1)                                                     8

21 U.S.C. § 355(c)(2)                                                     8

21 U.S.C. § 355(j)(2)(A)(vii)(I-IV)                                       9

21 U.S.C. § 355(j)(5)(B)(iv)                                             9

28 U.S.C. 2201(a)                                                4

Rules

Rule 41(a)(2)                                                   6, 7

Plaintiff Merck & Co., Inc. ("Merck") submits this reply brief in support of its motion to dismiss for lack of subject matter jurisdiction. Merck is seeking a dismissal of this action with prejudice for lack of subject matter jurisdiction because the covenant not to sue that Merck has given Watson Laboratories, Inc. ("Watson") renders moot the controversy between the parties. *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F. 3d 1054 (Fed. Cir. 1995).

## <u>INTRODUCTION</u>

Watson fails to address the controlling law and mischaracterizes the record. Watson's opposition is based on two erroneous premises: (1) that Merck's covenant not to sue is an "unenforceable promise that has no legal significance;" and (2) that Watson will be prejudiced because it will not have 180 days of exclusivity for its generic under the Hatch-Waxman Act and because (allegedly) the covenant not to sue will not "trigger" FDA approval. D.I. 22 at 2.

Watson is wrong on both points. On the first, Merck's covenant not to sue has been executed, given to Watson and filed with this Court. Watson points to no flaw in the covenant, which unequivocally details its scope and which explicitly states it is "unconditionally" granted. On the second, Watson will not be harmed in any way by the dismissal with prejudice of this case. Watson cannot obtain 180 day generic exclusivity, as that right belongs to another (Teva). And, a dismissal with prejudice, along with Merck's covenant not to sue, will act as the very "triggering event" for FDA approval Watson seeks (and could have had long before now, but for its concerted delay of the dismissal of this case).

- 1 -

Before addressing the merits, Merck notes that Watson's brief in several places, directly or indirectly, accuses Merck of pursuing this litigation in bad faith. Although that accusation is not relevant to the issue at hand of subject matter jurisdiction, its seriousness warrants response.

In particular, Watson asserts that "with full knowledge of both Watson's alendronate tablet formulations and the Federal Circuit's conclusive invalidity finding, Merck instituted this infringement action against Watson on September 7, 2005" and that "Merck continued to actively pursue its claims against Watson even after the U.S. Supreme Court denied Merck's petition for a writ of certiorari on October 17, 2005." D.I. 22 at 2. "Merck's Complaint was without merit for a host of reasons at the time [it] was filed and continues to be" because "several claims of the '329 patent (Count VII) had been judicially determined to be invalid at the time the Complaint was filed" and the "other patents . . . are invalid for the same reasons relied on by the Federal Circuit" or for other reasons. *Id*. at 16. "[A]t the time of filing suit, Merck knew that the claims of its once-weekly dosing regimen patents were invalid…." *Id*. at 14. In providing its covenant not to sue, "Merck effectively conceded that it could no longer continue to pursue its allegations of infringement in good faith. At the same time, Merck recognized that it must obtain the Court's dismissal of this action in a way that would not lead to undesired results with respect to generic exclusivity provided by the Hatch-Waxman Act. It would be unfair to permit Merck to escape the consequences of filing this action." *Id*. at 16.

Watson's serious accusation is baseless. First, at the time Merck filed suit, there had not been a final adjudication of the litigated patent claims of the '329 patent

which this Court had determined to be valid.  Although the Federal Circuit had reversed, Merck had sought a writ of certiorari to the U.S. Supreme Court seeking to reinstate the judgment of this Court.  The petition seeking certiorari was denied only on October 17, 2005, well after Merck filed its complaint and shortly before Merck offered its covenant not to sue.  There can be no question that Merck was pursuing a legitimate avenue of appeal (for example, Teva never suggested otherwise).

Second, only two claims of the '329 patent were at issue in that earlier litigation, not "several" as asserted by Watson.  The other patent claims are still entitled to the presumption of validity.  Likewise, the claims of the other eight patents in suit are entitled to the presumption of validity.  The covenant not to sue is a typical covenant not to sue; it cannot be construed as an admission of anything.  Indeed, as the exhibits to Merck's motion to dismiss show, Merck refused to agree to any document which provided that the patents were not valid or not infringed.  Moreover, the covenant not to sue explicitly states that it has no bearing on issues of validity, enforceability or infringement.

Third, as explained below, Merck in pursuing this lawsuit could not have had a motivation to affect generic exclusivity.  Another party long ago positioned itself to first rights to exclusivity (Teva) and only one party is granted generic exclusivity.  And, as explained below, the covenant not to sue and dismissal with prejudice will "trigger" the FDA's approval for Watson (assuming it is otherwise entitled to approval), so that it will be in no different position with respect to the FDA than if it litigated this case to conclusion and won.

Finally, the baseless accusation that Merck "continued" this case when allegedly knowing that its patents were invalid is particularly notable. It is Watson who has continued this case and delayed its dismissal since November 3, 2005 (as reflected in the record of the exhibits attached to Merck's motion to dismiss), when Merck first told Watson that it would grant Watson a covenant not to sue.

## ARGUMENT

### I.   MERCK'S COVENANT NOT TO SUE WATSON ELIMINATES SUBJECT MATTER JURISDICTION.

#### A.   Watson Cannot Meet Its Burden Of Establishing That Jurisdiction Still Exists Over Its Declaratory Judgment Action.

The Declaratory Judgment Act states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration," provided there exists "a case of actual controversy within its jurisdiction." 28 U.S.C. 2201(a). The statute requires a court to determine whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). In determining whether such a controversy exists in patent cases seeking declaratory relief, the Federal Circuit has developed a two-part test:

> [t]here must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir. 1993); *see also Teva Pharms. USA, Inc. v. Pfizer, Inc.,* 395 F.3d 1324, 1332 (Fed.Cir. 2005). "The element of threat or reasonable apprehension of suit turns on the conduct of the patentee, while the infringement element depends on the conduct of the asserted infringer." *BP Chems.,* 4 F.3d at 978.

A party seeking a declaratory judgment bears the burden of establishing the existence of an actual controversy. *Sierra Applied Scis. v. Advanced Energy Indus., Inc.,* 363 F.3d 1361, 1373 (Fed.Cir. 2004). Moreover, the "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed. 2d 272 (1975). Accordingly, the party seeking a declaratory judgment has the burden of establishing that "jurisdiction over its declaratory judgment action existed at, *and has continued since, the time the [counterclaim] was filed.*" *Super Sack,* 57 F.3d at 1058 (citation omitted) (emphasis added); *Sierra Applied Scis.,* 363 F.3d at 1373. The Federal Circuit has therefore held that a patentee may divest a court of subject matter jurisdiction over an accused infringer's declaratory judgment action by covenanting not to sue the accused infringer for past or present acts of infringement. *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 855-56 (Fed.Cir. 1999).

> **B.    Merck's Covenant Not To Sue Is Fully Consistent With The Federal Circuit's Requirements As Set Forth In *Super Sack* And *Amana.*__**

Contrary to the conclusory statements in Watson's brief, Merck's covenant not to sue and its motion to dismiss (D.I. 17) are congruent in all relevant respects with the promise not to sue and motion to dismiss in *Super Sack* on which

Merck's covenant and subsequent motion were predicated.  Watson nonetheless insists that Merck's promise not to sue is somehow conditional and unenforceable, but points to no meaningful difference between the covenant Merck granted Watson, and the covenant at issue in *Super Sack* or to any case law to support its position.  *See, e.g.*, D.I. 22 at 5-6. Merck's release is explicitly unconditional, and it is legally binding, meeting all the requirements of *Super Sack* and *Amana*.  Just as the promise at issue in *Super Sack* did, the covenant at issue here divested this Court of Article III jurisdiction, and has left Watson free from fear of an infringement suit.[1]

> C.     **Dispute Over Entry of A Consent Order Is Not Sufficient To Support The Court's Continued Jurisdiction Over Watson's Declaratory Judgment Counterclaims.**

Watson argues that the Federal Rules of Civil Procedure give this Court discretion to impose terms and conditions on its order of dismissal, relying chiefly on *Minnesota Mining and Mfg. Co., et al. v. Barr Labs., Inc.,* 289 F.3d 775, 783 (Fed.Cir. 2002).  While Rule 41(a)(2) as a general matter does empower a court to condition voluntary dismissals (where the Court would otherwise still have jurisdiction), the short

---

[1]  Watson complains that the covenant does not exclude the possibility that Merck could sue Watson in the future for infringement based on the filing of the ANDA itself.  But there can be no question that dismissal of this suit with prejudice will exclude precisely that possibility.

At the same time that Watson asserts that the covenant is unenforceable and without effect, it asserts that the covenant is proof that Merck "no longer disputes the non-infringement and invalidity of the nine patents-in-suit."  D.I 22 at 17.  Nothing could be further from the truth, although Watson bases its procedurally defective request for summary judgment on this notion.  Merck will respond to Watson's motion for leave to file a motion for summary judgment (D.I. 20) separately.  As noted above, only one of the nine patents has been litigated at all, and as to that patent, only two claims were litigated.

answer to Watson's argument is that the Federal Rules of Civil Procedure do not trump Article III of the Constitution. If a plaintiff's actions suffice to divest a court of subject-matter jurisdiction for want of "case or controversy" in accordance with *Super Sack* and *Amana*, then it follows that a court may not exercise judicial powers to effectuate a legal result with respect to parties without a justiciable dispute before that court. That, of course, is exactly what Watson is asking this Court to do by requesting that the Court insert a judgment of non-infringement in its dismissal order.

Watson's reliance on *Minnesota Mining and Manufacturing* ("*3M*") is misplaced. Contrary to Watson's assertions, *3M* does not contradict the settled law of *Super Sack* and *Amana*. If anything, the Federal Circuit's decision in *3M* supports Merck's position. In *3M*, the Federal Circuit faced a tortuously complex fact pattern arising under the Hatch-Waxman Amendments to the Federal Food, Drug and Cosmetics Act ("FFDCA"). After bringing an infringement suit on the basis of what it later contended was a defective filing by the defendant with the Food and Drug Administration, plaintiff 3M moved to dismiss under Rule 41(a)(2), agreeing that no infringement had occurred. It maintained that the district court was thereby divested of subject matter jurisdiction, and was required to dismiss the case *without prejudice*. Barr, the defendant-appellee, while supporting the dismissal, argued that a dismissal of 3M's claims should be *with prejudice* for reasons relating to the intricate structure of the Hatch-Waxman Amendments and the extent to which certain follow-on drug registrants would be entitled to market exclusivity. *See* 289 F.3d at 778. The Federal Circuit acknowledged that the case or controversy ceased to exist in the course of the litigation when 3M represented that it no longer claimed infringement by Barr, but concluded that

the statutory consequences attaching under the FFDCA to *whether the dismissal would be with or without prejudice constituted sufficient controversy to satisfy the case or controversy requirement.* *Id.* at 780, *citing ASARCO, Inc. v. Kadish,* 490 U.S. 605 (1989).   Unlike in *3M*, the order of dismissal here is to be *with prejudice*.   No independent statutory consequences attend the form of order in this case.   Consequently, *3M* is consistent with, and supports, Merck's position.

## II.     WATSON WILL NOT BE HARMED BY THE DISMISSAL WITH PREJUDICE

Watson claims that it will be prejudiced by a dismissal with prejudice, but asserts that a "complete discussion of the nuances of the Hatch-Waxman Act is not necessary for purposes of Watson's opposition."   D.I. 22 at 12, fn. 7.   An examination of the Hatch-Waxman Act, however, shows that Watson will *not* be harmed by a dismissal with prejudice.   Indeed, with Merck's covenant not to sue and a dismissal with prejudice in this case, Watson's ANDA will be treated under that act as though a full adjudication on the merits had been resolved in Watson's favor.

Merck holds an approved New Drug Application ("NDA") for FOSAMAX® products for the treatment and prevention of bone diseases.   The Hatch-Waxman Act provides that NDA holders like Merck must notify the FDA of all patents that "claim[ ] the drug for which the [NDA] applicant submitted the application . . . and with respect to which a claim of patent infringement could reasonably be asserted . . . " 21 U.S.C. § 355(b)(1), (c)(2).   Merck has done so, and the FDA has listed these patents

and their expiration dates in the publication "Approved Drug Products With Therapeutic Equivalence Evaluations" (commonly referred to as the "Orange Book").[2]

   As part of the approval process, an ANDA applicant such as Watson must make one of four certifications with respect to each patent listed in the Orange Book that claims the drug for which it is seeking approval:  (I) no such patent information has been submitted to the FDA; (II) the patent has expired; (III) the patent is set to expire on a certain date; or (IV) the patent is invalid or will not be infringed by the manufacture, use, or sale of the new generic drug for which the ANDA is submitted.  21 U.S.C. § 355(j)(2)(A)(vii)(I-IV).  These are commonly referred to as paragraph I, II, III, and IV certifications.  Watson has filed a paragraph IV certification for all but one of the listed patents for Merck's FOSAMAX® products.

   Only the *first* ANDA applicant to file a paragraph IV certification and prove that the ANDA product will not infringe the patents or that the patents are invalid will enjoy a 180-day period of generic marketing exclusivity, during which the FDA may not approve a subsequent generic applicant's ANDA for the same drug product.  21 U.S.C. § 355(j)(5)(B)(iv).  This provision provides an economic incentive for generic manufacturers to challenge the validity of listed patents and to "design around" patents to find alternative, non-infringing forms of patented drugs.  With regard to the patents in suit in this case, Teva Pharmaceuticals USA, Inc. was the first to certify and dispose of them through Hatch-Waxman Act practice.  *See Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005).

---

[2] The Orange Book is also available on the Internet at http://www.fda.gov/cder/ob/.

In this case, Watson appears to have two goals, neither of which is attainable. First, Watson seeks the 180-day exclusivity period. But Watson cannot obtain exclusivity because it is far from the first generic drug manufacturer to provide notice of certification of any of the patents in suit.

Second, Watson wants a stipulation of non-infringement from Merck, because Watson believes that the FDA needs this to "trigger" approval of Watson's ANDA. Again, Watson is wrong. Merck seeks a dismissal of this case for lack of subject matter jurisdiction as provided by *Super Sack v. Chase*. In *3M* cited in Watson's opposition, the Federal Circuit held that in a Hatch-Waxman case, a dismissal "based on the underlying finding that the patent holder had made express assurances that it would not bring suit" for infringement will serve as a "trigger" under the Hatch-Waxman Act, just as would an adjudication on the merits in favor of the ANDA filer. *See 3M*, 139 F.Supp. 2d at 1116 (citing *Teva Pharmaceuticals USA, Inc. v. United States Food & Drug Admin.*, 182 F.3d 1003, 1009 (D.C. Cir. 1999). Because Merck has granted Watson a covenant not to sue on all of the patents in suit and Merck seeks a dismissal with prejudice, Watson will receive the "trigger" it seeks under the Hatch-Waxman Act.

## <u>CONCLUSION</u>

For all of the reasons described above and in Merck's Motion to Dismiss (D.I. 17), Merck respectfully requests that Merck's Motion to Dismiss be GRANTED. Watson has failed to meet its burden of proof that subject matter jurisdiction remains in this matter or that it is entitled to the relief it seeks.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*
_____

OF COUNSEL:

John F. Lynch
HOWREY, LLP
750 Bering Drive
Houston, TX  77057-2198
713.787.1400

Nicolas G. Barzoukas
Suzy S. Harbison
Jason C. Abair
WEIL, GOTSHAL & MANGES
700 Louisiana, Suite 1600
Houston, TX   77002
713.546.5000

Paul D. Matukaitis
MERCK & CO., INC.
One Merck Drive
Whitehouse Station, NJ  08889-0100
908.423.1000

Edward W. Murray
Gerard M. Devlin
MERCK & CO., INC.
126 E. Lincoln Avenue RY28-320
Rahway, NJ  07065-0907
732.594.4000

Mary B. Graham (# 2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Plaintiff*
*Merck & Co., Inc.*

Dated:  March 20, 2006
512220

- 11 -

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Adam Balick, Esquire
> BIFFERATO GENTILOTTI BIDEN & BALICK
> 711 King Street
> Wilmington, DE 19801

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on March 20, 2006 upon the following individuals in the manner indicated:

**BY HAND**

Adam Balick, Esquire
BIFFERATO GENTILOTTI BIDEN & BALICK
711 King Street
Wilmington, DE 19801

**BY FACSIMILE**

Steven H. Sklar, Esquire
LEYDIG, VOIT & BAYER, LTD.
2 Prudential Plaza, Suite 4900
Chicago, IL 60601

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)